# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN THE MATTER OF:

STAYMOBILE VENTURE LLC,

Debtor.

Chapter 7
Case No. 22-43781-lsg
Hon. Lisa S. Gretchko

_____/

## TRUSTEE'S MOTION TO COMPROMISE
### AND SETTLE CLAIMS AGAINST BRIAN EISENBERG, KENNETH EISENBERG, AND STEPHEN EISENBERG, KENWAL INVESTMENT GROUP, LLC, FRANK JERNEYCIC, HONIGMAN LLP, ALAN SCHWARTZ, AND MATTHEW RADLER

NOW COMES Timothy J. Miller, the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Staymobile Venture LLC, by and through his counsel OSIPOV BIGELMAN, P.C., to compromise and settle claims against Brian Eisenberg, Kenneth Eisenberg, Stephen Eisenberg (collectively, the "Eisenbergs"), Kenwal Investment Group, LLC ("KIG", and collectively with the Eisenbergs, the "Secured Creditors[1]"), Frank Jerneycic, Honigman LLP, Alan S. Schwartz, and Matthew E. Radler  ("Settling Parties").  and states as follows:

## JURISDICTION

1.      This Court has jurisdiction over compromises concerning property of the estate pursuant to 28 U.S.C. § 157.

2.      This matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2).

3.      The Trustee brings this Motion in accordance with Fed. R. Bankr. P. 9019.

## FACTUAL STATEMENT

4.      Staymobile Venture, LLC ("Debtor") filed a voluntary petition under Chapter 7 of

_____

[1] "Secured Creditors" is a defined term for ease of reference only, not an acknowledgement that these persons are actually secured creditors of the Bankruptcy Estate.

the bankruptcy code on May 9, 2022 (the "Petition Date").

5.      The Trustee was appointed the Chapter 7 Trustee of Debtor's bankruptcy estate (the "Estate").

## Sale of Inventory and Equipment

6.      Pursuant to an order of this court, Docket #190, the Trustee sold all of the Debtor's inventory, equipment and vehicles and obtained gross proceeds in the amount of $1,138,778.66.

7.      The balance of the assets of the estate consists of accounts receivable which have minimal value due to setoff defenses based on the 50,000 unserviced Chromebooks in the Debtor's warehouses as of the petition date.

8.      The bankruptcy estate is currently administratively insolvent.

## Due Diligence by the Trustee

9.      Since the outset of the case, the Trustee through his counsel has conducted a massive investigation of the Eisenbergs, the management of the Debtor, and the professionals hired by the Eisenbergs and the Debtor.

10.     The Trustee has conducted both formal and informal discovery in order to flush out the claims set forth herein.

11.     This massive undertaking included, but was not limited to: a thorough review of financials records of the Debtor, the communications of the Debtor's officers, agreements that the Debtor entered into, examinations of former officers of the Debtor, obtaining and reviewing information from former officers of the Debtor, obtaining and reviewing over 7,000 communications between the Debtor, the Eisenbergs, and their counsel Honigman LLP, Honigman LLP's billing records, obtaining and reviewing over 30,000 communications between the Eisenbergs and Frank Jerneycic, and discussing and obtaining information from creditors,

professionals, and parties in interest.

12. During this due diligence period of approximately 18 months, the Trustee had continuous settlement negotiations with the Settling Parties.

13. The Settlement presented for approval to the Court in this motion is by far the best settlement that was negotiated and is a direct result of the due diligence of the Trustee in pursuing this matter.

### Scheduled Claims of Eisenbergs

14. The Debtor in its Bankruptcy Schedule D at paragraphs 2.2-2.4 scheduled aggregate secured claims totaling $2,500,000.00 in favor of the Eisenbergs. These claims arise from purported loans to the Debtor and are memorialized by three separate promissory notes and a security agreement. A U.C.C.-1 financing statement filed with the State of Michigan allegedly perfected the Eisenbergs' security interest.

15. The Eisenbergs' purported secured claims constitute 99.5% of all scheduled secured claims.

16. The Eisenbergs' purported secured claims can be found at Proof of Claims #58, 59, and 60.

17. The security interest of the Secured Parties would be limited to the net proceeds from the asset sale.

18. In proof of claim #58, Brian Eisenberg also asserts an unsecured claim in the amount of $4,621,521.02.

### Claims Asserted by the Trustee

19. The Trustee has asserted the following claims against the Settling Parties:

A. A fraudulent transfer claim against KIG only as a result of a settlement agreement and release with former Chief Executive Officer of the Debtor Brian Hutto under Section

548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code ("Hutto Claims").

**Description**: The Trustee asserts that this claim is based upon a transaction wherein the Debtor released its claims against Hutto for fraud, embezzlement, breach of restrictive convenants in his employment agreement, and other intentional torts, Hutto transferred his 12.5% interest in KIG to KIG, and the Debtor received nothing of value in exchange therefor. The transaction was memorialized by Honigman LLP who at the time was representing both KIG and the Debtor. KIG and Honigman LLP deny liability claiming that the Debtor received reasonably equivalent value in consideration therefor, in the form of a release from Hutto.

B. Fraudulent transfer claims against Brian M. Eisenberg only under Section 548 and 549 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code for his receipt of the following transfers (the "<u>Transfers</u>"):

| | |
|---|---|
| A. January 2, 2020 - | $165,000.00 |
| B. June 17, 2020 - | $500,000.00 |
| C. June 31, 2020 - | $1,500,000.00 |
| D. November 20, 2020 - | $100,000.00 |
| E. November 20, 2020 - | $900,000.00 |
| F. December 30, 2020 - | $500,000.00 |
| G. December 30, 2020 - | $500,000.00 |
| H. February 17, 2022 - | $250,000.00 |
| I. May 6, 2022 - | $66,851.40 |
| J. May 11, 2022- | $24,510.95 |

**Description**: The Trustee asserts that these transfers are avoidable as they were made pre-petition while the Debtor was insolvent and the Debtor did not receive reasonably equivalent value in return and the final transfer was made post-petition without authorization. Brian Eisenberg denies liability claiming that these were loan repayments and that the Debtor was solvent at the time of the transfers.

C. Fraudulent transfer claims under Section 548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code against Honigman LLP, KIG, Brian M. Eisenberg, Stephen A. Eisenberg, and Kenneth A. Eisenberg for funds paid by the Debtor to Honigman LLP for legal services provided to third parties for which the Trustee asserts reasonably equivalent value was not received by the Debtor;

**Description**: The Trustee asserts that the Debtor did not receive reasonably equivalent value for payments made to Honigman LLP, as Honigman LLP invoiced the Debtor for work done for or for the benefit of the Secured Creditors; as opposed to the Debtor. Honigman LLP denies liability for the claims asserted.

D. Avoidance of the purported security interest of Kenneth A. Eisenberg, Stephen A.

Eisenberg and Brian M. Eisenberg pursuant to Section 548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code;

**Description**.  The Trustee asserts that the security interest is avoidable as the security agreement was signed and a financing statement was filed prior to Kenneth and Stephen Eisenberg funding their respective notes.  The Trustee also challenged the security interest on the basis that the security agreement was defective.  Kenneth A. Eisenberg, Stephen A. Eisenberg and Brian M. Eisenberg deny liability for the claims asserted arguing that the loans were "substantially contemporaneous".

E.  Breach of Fiduciary Duty claims against KIG and Brian M. Eisenberg only regarding the Transfers. Brian M. Eisenberg and KIG deny liability with respect to these claims[2];

F.  Breach of Fiduciary Duty claims against Honigman LLP, Alan S. Schwartz, and Matthew E. Radler regarding the Hutto Claims Honigman LLP, Alan S. Schwartz, and Matthew E. Radler deny liability with respect to these claims[3];

G.  Breach of Fiduciary Duty (Aiding and Abetting) claims against Brian M. Eisenberg, Stephen A. Eisenberg, Kenneth A. Eisenberg, Frank Jerneycic, Honigman LLP, Alan S. Schwartz, and Matthew E. Radler regarding:

  (1)  Causing the Debtor to sell the Cellairis Bundle, the Constant Connectivity Warranty Program ("CCWP1"), and the Second Constant Connectivity Program ("CCWP2") at a loss;

  (2)  Causing the Debtor to use the revenues from its sale of the CCWP1 and CCWP2 warranties to service unfunded or underfunded warranty obligations;

  (3)  Causing the Debtor to fail to maintain any reserves to service future warranty obligations;

  (4)  Causing the Debtor to fail to fund premiums for CLIP; and

  (5)  Causing the Debtor to engage in the fraudulent transfers described herein.

Brian M. Eisenberg, Stephen A. Eisenberg, Kenneth A. Eisenberg, Frank Jerneycic, Honigman LLP, Alan S. Schwartz, and Matthew E. Radler deny liability for these claims.

H.  Legal Malpractice against Honigman LLP, Alan S. Schwartz, and Matthew E. Radler;

---

[2] The description of these claims is contained in paragraph 19(B).
[3] The description of these claims is contained in paragraph 19(A).

> **Description**: The Trustee assert this malpractice claim based on the transactions described herein. Honigman LLP, Alan S. Schwartz, and Matthew E. Radler deny liability for these claims.

20. As stated above, the Settling Parties have asserted defenses to each of these claims and have denied any liability therefor. The Settling Parties have advised the Trustee that if an action were filed against the Settling Parties on these claims, they would vigorously defend such litigation. The Settling Parties have engaged highly qualified counsel to represent their interests whom this Court is familiar with.

21. Following a thorough review of the claims as described herein, the Trustee and the Secured Creditors have entered into a Settlement Agreement (the "<u>Settlement Agreement</u>", a copy of which is attached hereto as **Exhibit 6-A**), subject to approval of the Bankruptcy Court, to resolve all claims against the Settling Parties. There are risks associated with this release and the Trustee has considered the risks and has made a sound business judgment that those risks are outweighed by the substantial benefits to be conferred to the Estate in the event the Settlement Agreement is approved.

22. The Settlement Agreement, among other things, provides for the following (to the extent of any inconsistency between the terms and conditions of Settlement Agreement and the description of the Settlement Agreement below, the Settlement Agreement shall control):

    A.    The Secured claims asserted by Brian Eisenberg ($1,500,000.00)[4], Kenneth Eisenberg ($500,000.00), and Stephen Eisenberg ($500,000.00), Proof of Claims #58-60, are avoided by the Estate pursuant to Sections 544, 547, and 548 of the Code and preserved for the benefit of the Estate pursuant to Section 551;

    B.    The Secured Creditors will withdraw, will not assert, and waive all other claims against the Estate;

    C.    The Secured Creditors, collectively, shall pay the Estate

---

[4] Along with Brian Eisenberg's unsecured claim of $4,621,521.02.

$750,000.00 within 7 days of the Effective Date as defined in the settlement agreement; and

D.    A bar of litigation of re-litigation of the claims as described in the settlement agreement, to wit:

Bar of Litigation of Claims:  The entry of this Order constitutes the Bankruptcy Court's approval of the compromise and settlement of all claims, actions, causes of action, and controversies against the Settling Parties as set forth in the Settlement Agreement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor and its Bankruptcy Estate, and is fair, equitable, and reasonable.  For good and valuable consideration, all creditors of the Debtor who are served with notice of the Trustee's 9019 Motion (seeking approval of this Settlement Agreement) are hereby permanently BARRED, ENJOINED and RESTRAINED from (i) commencing, continuing, prosecuting, or asserting, in any manner, any action or proceeding of any kind in respect of the Claims against the Settling Parties, whether arising as claims, cross-claims, counterclaims, or third-party claims, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere and (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or other order against any of the Settling Parties relating to or arising from the Claims,  (collectively, the "Barred Claims").  Such injunction with respect to the Barred Claims shall extend to any successor, assign, heir, beneficiary, executor, and representative of or to the Settling Parties.

23.    This is a very limited "Bar of Litigation of Claims" as it is (a) limited to the defined Claims that the Trustee could have brought, which were assets of the Debtor's estate, and (b) limited in scope to only **creditors** of the Debtor and, more specifically, only those creditors who receive service of the notice of thsi motion.  All creditors and parties in interest in this bankruptcy case have been served with notice of this motion.

24.    The Trustee is unaware of any third party asserting any claims against some or all of the Settling Parties except for one creditor, Bluum USA, Inc. ("Bluum").

25.    The Trustee is unaware of what claims Bluum may assert against some or all of the

Settling Parties as Bluum has refused to share its draft complaint with the Trustee despite repeated requests.

26.     This Settlement Agreement is in the best interest of creditors for the following reasons:

A.      It will make the Estate solvent and ensure a distribution to creditors;

B.      It will eliminate 99.5% of all scheduled secured claims;

C.      It will eliminate an unsecured claim in the amount of $4,621,521.02;

D.      It brings in to the estate approximately $1,888,778.66 for distribution to creditors;

E.      It eliminates litigation risk and costs of litigation, which would be expected to be extremely costly at the expense of the creditors.

27.     The Trustee in his business judgment submits that the Settlement Agreement is in the best interest of the Estate.

## Legal Basis for Relief Requested

28.     It is generally held that a bankruptcy court may approve a settlement if it is fair and equitable, and in the estate's best interest. *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (Sixth Cir., 1988); *In Re American Reserve Corp.*, 849 F.2d 159, 161 (Seventh Cir., 1987).

29.     Four factors are relevant to the bankruptcy court's review of a proposed compromise:

A.      The probability of success in the litigation;

B.      The difficulties, if any, to be encountered in the matter of collection;

C.      The complexity of the litigation involved, the expense, inconvenience, and delay necessarily attending it; and

D.      The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In Re Jackson Brewing Co.*, 624 F.2d 605, 607 (Fifth Cir., 1980); *In Re American Reserve Corp.*, 841 F.2d 161; *In Re Woodson*, 839 F.2d 610, 620 (Ninth Cir., 1998).

Trustee, in recommending that this Court approve the Agreement, has given due weight to the four (4) criteria set forth in *In re Jackson Brewing Co.* and believes the Agreement is fair and equitable and in the best interest of the Estate. Among other things, the Trustee has considered the potential continued cost and expense of litigation regarding the merits of the Secured Creditors' claims, the payment being made by the Secured Creditors, and the fact that this will ensure a distribution to creditors. These factors weigh heavily in favor of the proposed compromise and approval of the Settlement Agreement.

### Applicable Law Regarding "Bar of Litigation of Claims"

30. The Sixth Circuit has long recognized that a Bankruptcy Court has statutory authority to impose a bar order as part of a settlement between the Estate and one or more defendants. *In re Dow Corning Corp.,* 280 F.3d 648 (6th Cir. 2002) (Section 105 grants Court broad authority to enter orders that are necessary or appropriate to carry out provisions of Code, and Section 524(e) "does not prohibit the release of a non-debtor"); *In re City of Detroit,* 524 BR 147 (Bankr. E.D. Mi. 2014) (Section 524 does not preclude third party releases, citing *Dow Corning).*

31. In addition, the Bankruptcy Court may impose such a bar order affecting non-debtor third-parties where the Bankruptcy Court has jurisdiction under Title 28 U.S.C. § 1334. "Related-to" jurisdiction exists under Section 1334 where the subject of a third-party dispute is property of the estate. *See, e.g. Feld v. Zale Corporation*, 62 F.3d 746, 753 (5th Cir.1995). *See also, Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (Inre Wolverine Radio Co.),* 930 F.2d 1132, 1143 (6th Cir. 1991). This Court has related-to jurisdiction to enter the requested bar order because, as more fully described below, the subject of the bar order (*i.e.* the Claims, comprising pre- and post-petition claims of the Debtor) are property of the estate. See 11 U.S.C. §541(a)(1).The Court

in *Dow Corning* outlined factors to be considered in evaluating proposed bar orders. These factors may be tailored to the needs of the case and the proponent of the bar order is not required to satisfy all seven *Dow* factors. *In re City of Detroit,* 524 BR 147 (Bankr. E.D. Mi. 2014) *citing National Heritage Foundation, Inc. v. Highbourne Found,* 2014 WL 2900933 (4th Cir. 2014).

a. <u>Identity of Interest Between Debtor and Third Parties</u>: The parties to be released consist of creditors who received allegedly fraudulent transfers, plus various individuals and law firms who managed or provided legal assistance to Debtor before commencement of this case. Each of the defendants potentially has claims against Debtor for indemnification or contribution. These potential claims are sufficient to establish the identity of interest needed to support a bar order.

b. <u>The defendants are contributing substantial assets to the case</u>: The defendants will contribute $750,000.00 to the Estate in addition to releasing its claim on the proceeds from the sale totaling $1,138,778.66. Further, the Secured Creditors will relinquish secured claims totaling $2.5 million (more than 99% of all scheduled secured claims and will withdraw and waive all other claims against the Estate including unsecured claims aggregating in excess of $4.6 million. The settlement funds in conjunction with the released claims will significantly enhance the distribution to unsecured creditors.

c. <u>The injunction is essential to reorganization</u>: This factor does not apply as this Case is a liquidation under Chapter 7. Bar orders are available in Chapter 7 as well as liquidating Chapter 11 cases – it is not necessary that Debtor intend to continue in business or even be in business for the Court to approve a bar order. Further, the bar order is of limited effect, barring only the Claims (as defined in the Settlement Agreement) arising in or related to Debtor's Bankruptcy Estate. The bar order does not preclude any third party from bringing an action against any of the Settling defendants arising out any other transaction or occurrence. *See In re Equine Oxygen Therapy Resources, Inc.,* 2015 WL 1331540 (Bankr. E.D. Ky. 2015) (Chapter 7 Trustee's Motion to Approve Settlement that contained bar order approved – settlement was fair and equitable; Proceeds paid into the estate were fair and reasonable compromise for claims being released; payment of funds to the Trustee did not prejudice estate or other claimants; and bar was limited to claims arising out of specified transactions and did not materially affect interest of any party for an unrelated loss); *In re Exide Holdings, Inc.,* 2021 WL 3145612 (D. Del. 2021) (settlement including bar order appropriate in liquidating Chapter 11): *In re Weinstein Company Holdings,* 2021 WL 979603 (D. Del. 2021) (bar order approved in settlement in liquidating Chapter 11 –Debtor had been out of business for years, plan did not preserve or protect Debtor; settlement did not preserve any jobs; and liquidation was functional equivalent of Chapter 7 did not preclude entry of bar order). In this case, the Settlement produces substantial additional funds plus additional relief resulting from the waiver or withdrawal of claims that will enhance

the ultimate distribution to creditors while eliminating the risk, expenses and uncertainty of continue litigation.

d. <u>Impacted creditors have voted in favor of the Plan</u>: The settlement has been noticed to all parties and Debtor anticipates little, if any, opposition to the settlement in general or the bar order specifically. Debtor anticipates that the vast majority of creditors will "accept" the proposed terms by not objecting to the terms.

e. <u>The Plan proposes to pay claims of those impacted</u>: Each creditor will receive its share of the Debtor's estate (enhanced by the value received under the settlement) to be distributed by the Trustee.

f. <u>The Plan provides an opportunity for objecting creditors to recover</u>: This factor is not applicable. Debtor is out of business and there is no opportunity for further recovery.

g. <u>The Cout makes sufficient factual findings to support the Settlement including the bar order</u>: The terms of the settlement and history of this matter are described in this Motion and provide the Court with a factual background to find the Settlement meets the standards for approval under Rule 9019 and that the Estate will be substantially enhanced to the benefit of all creditors.

<u>32.</u>     The Trustee has provided notice to creditors of the proposed compromise of the claim in accordance with L.B.R. 9014-1 (E.D.M.).

**WHEREFORE,** the Trustee respectfully requests this Court grant this Motion; approve the terms of the Settlement Agreement and authorize the Trustee to enter into the Settlement Agreement on behalf of the Estate as more fully set forth in **Exhibit 1**.

Respectively Submitted,

DATED: January 26, 2024                **OSIPOV BIGELMAN, P.C.**

_/s/_ Jeffrey H. Bigelman
Jeffrey H. Bigelman (P61755)
Attorneys for Chapter 7 Trustee
20700 Civic Center Dr Suite 420
Southfield, MI 48076
(248) 663-1800
jhb@osbig.com

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

STAYMOBILE VENTURE LLC,
Chapter 7
Case No. 22-43781-lsg
Hon. Lisa S. Gretchko

       Debtor.

_____/

**ORDER GRANTING
TRUSTEE'S MOTION TO COMPROMISE
AND SETTLE CLAIMS AGAINST BRIAN EISENBERG, KENNETH EISENBERG,
AND STEPHEN EISENBERG, KENWAL INVESTMENT GROUP, LLC, FRANK
JERNEYCIC, HONIGMAN, LLP, ALAN SCHWARTZ, AND MATTHEW RADLER**

      **THIS MATTER** having come before the Court on the Trustee's Motion to Compromise

and Settle Claims Against Brian Eisenberg, Kenneth Eisenberg, Stephen Eisenberg (collectively,

the "Eisenbergs"), Kenwal Investment Group, LLC ("KIG", and collectively with the Eisenbergs,

the "Secured Creditors "), Frank Jerneycic, Honigman, LLP, Alan S. Schwartz, and Matthew E.

Radler ("Settling Parties") [Docket No. ____] (the "Motion"); due and appropriate notice having

been provided pursuant to Bankruptcy Rules; and the Court being duly advised in the premises

and finding good cause for the entry of the Order:[5]

      **IT IS HEREBY ORDERED** that Trustee's Motion is granted.

      **IT IS FURTHER ORDERED** that the Trustee is authorized to enter into, perform in

accordance with, comply with, and enforce the Settlement Agreement attached to the Motion as

Exhibit 6-A on behalf of the Estate.  To the extent of any inconsistency in the description of the

settlement as contained in the Motion, the notice of the Motion, and/or the Settlement Agreement,

---

[5] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

the Settlement Agreement controls.

**IT IS FURTHER ORDERED** that the Settlement Agreement and this Order fully and finally resolves all claims of the Trustee and the Bankruptcy Estate against the Settling Parties.

**IT IS FURTHER ORDERED** that the claims asserted by Brian Eisenberg, Kenneth Eisenberg, and Stephen Eisenberg, including, but not limited to Proof of Claim #58-60 are avoided by the Estate pursuant to Section 544, 547, and 548 of the Code and preserved for the benefit of the Estate pursuant to Section 551 of the Code.

**IT IS FURTHER ORDERED** that the Settling Parties shall pay $750,000.00 to the Bankruptcy Estate within 7 days of this order becoming a final, non-appealable order.

**IT IS FURTHER ORDERED** that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any disputes related to the Settlement Agreement and this Order.

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

STAYMOBILE VENTURE LLC,

Chapter 7
Case No. 22-43781-lsg
Hon. Lisa S. Gretchko

          Debtor.

_____/

**NOTICE OF TRUSTEE'S
TRUSTEE'S MOTION TO COMPROMISE
AND SETTLE CLAIMS  AGAINST BRIAN EISENBERG, KENNETH EISENBERG,
AND STEPHEN EISENBERG, KENWAL INVESTMENT GROUP, LLC,  FRANK
JERNEYCIC, HONIGMAN, LLP, ALAN SCHWARTZ, AND MATTHEW RADLER**

TO:     ALL CREDITORS AND PARTIES IN INTEREST

Timothy J. Miller, Trustee has filed papers with the Court entitled Trustee's Motion to Compromise and Settle Claims against Brian Eisenberg, Kenneth Eisenberg, Stephen Eisenberg (collectively, the "Eisenbergs"), Kenwal Investment Group, LLC ("KIG", and collectively with the Eisenbergs, the "Secured Creditors "), Frank Jerneycic, Honigman, LLP, Alan S. Schwartz, and Matthew E. Radler  ("Settling Parties").  The proposed settlement would provide for the following:

    A.     The Secured claims asserted by Brian Eisenberg ($1,500,000.00)[6], Kenneth Eisenberg ($500,000.00), and Stephen Eisenberg ($500,000.00), Proof of Claims #58-60, are avoided by the Estate pursuant to Sections 544, 547, and 548 of the Code and preserved for the benefit of the Estate pursuant to Section 551;

    B.     The Secured Creditors will withdraw, will not assert, and waive all other claims against the Estate;

    C.     The Secured Creditors, collectively, shall pay the Estate $750,000.00 within 7 days of the Effective Date as defined in the settlement agreement; and

    D.     A bar of litigation of re-litigation of the claims as described

---

[6] Along with Brian Eisenberg's unsecured claim of $4,621,521.02.

in the settlement agreement, which is available upon request.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the motion or objection, or if you want the court to consider your views on the motion or objection, within **<u>twenty-one (21)</u>** days of the date of this notice, you or your attorney must:

1. File with the court a written response or an answer[7], explaining your position at:

**United States Bankruptcy Court**
**211 West Fort Street, Suite 2100**
**Detroit, Michigan 48226**

If you mail your response to the court for the filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Jeffrey H. Bigelman, Esq.                Office of the U.S. Trustee
OSIPOV BIGELMAN, P.C.               211 W. Fort Street, Suite 700
20700 Civic Center Drive, Suite 420     Detroit, Michigan 48226
Southfield, MI 48076

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the matter, and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought and may enter an order granting that relief.**

Respectfully submitted,

**OSIPOV BIGELMAN, P.C.**

Dated: January 26, 2024                /s/ Jeffrey H. Bigelman
                                       JEFFREY H. BIGELMAN (P61755)
                                       Attorneys for Timothy J. Miller, Trustee
                                       20700 Civic Center Drive, Suite 420
                                       Southfield, MI 48076
                                       Tel: 248.663.1800 / Fax: 248.663.1801
                                       jhb@osbig.com

---

[7] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

**EXHIBIT 4**

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN THE MATTER OF:

STAYMOBILE VENTURE LLC                                    Chapter 7
                                                          Case No. 22-43781-lsg
                                                          Hon. Lisa S. Gretchko

                      Debtor(s)

_____/

### CERTIFICATE OF SERVICE

Re:    Trustee's Motion for Order Authorizing Trustee to Compromise and Settle Claims Against
       Brian Eisenberg, Kenneth Eisenberg, Stephen Eisenberg, Kenwal Investment Group, LLC,
       Frank Jerneycic, Honigman, LLP, Alan S. Schwartz, and Matthew E. Radler, Exhibit 1 –
       Proposed Order, Exhibit 2 – Notice of Motion, and Exhibit 3 – N/A, Exhibit 4 – Certificate
       of Service, Exhibit 5 – N/A, and Exhibit 6-A – Settlement Agreement

I hereby certify that on January 26, 2024, I filed the foregoing paper(s) with the Clerk of the Court
using the Electronic Case Files system which will send <u>electronic notification</u> of such filing to the
<u>United States Trustee</u>, <u>Debtor</u>, and any additional parties that requested electronic service of
documents filed in this case.

I also certify that on January 26, 2024, I served a copy of Exhibit 2 – Notice of Motion via First
Class Mail, with sufficient prepaid postage, to <u>the debtor, the trustee, all indenture trustees,</u>
<u>creditors that hold claims for which proofs of claim have been filed and creditors that may still file</u>
<u>timely claims, pursuant to Local Bankruptcy Rule 2002-2</u>.

                                        Respectfully submitted,

                                        **OSIPOV BIGELMAN, P.C.**

Dated: January 26, 2024                 */s/* Jeffrey H. Bigelman
                                        JEFFREY H. BIGELMAN (P61755)
                                        Attorneys for Timothy J. Miller, Trustee
                                        20700 Civic Center Drive, Suite 420
                                        Southfield, MI 48076
                                        Tel: 248.663.1800 / Fax: 248.663.1801
                                        jhb@osbig.com

# EXHIBIT 6-A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Settlement Agreement"), which is subject to bankruptcy court approval, is made by and between: (i) Timothy J. Miller (the "Trustee"), trustee of the chapter 7 bankruptcy estate (the "Bankruptcy Estate") of Staymobile Venture LLC, Case #22-43781-lsg (the "Debtor"); and (ii) Kenwal Investment Group LLC, a Michigan limited liability company ("KIG"), Kenneth A. Eisenberg, Stephen A. Eisenberg and Brian M. Eisenberg (collectively, the "Secured Creditors"), Frank Jerneycic, Honigman, LLP, Alan S. Schwartz, and Matthew E. Radler (together with KIG and the Secured Creditors, the "Settling Parties"). Hereinafter, the Trustee and the Settling Parties are referred to collectively as the "Parties" and may be referred to individually as a "Party".

WHEREAS, the Secured Creditors[1] have asserted that, on or about July 21, 2021, they made certain secured loans to the Debtor, in the aggregate amount of $2,500,000, as follows: (i) a secured loan by Kenneth A. Eisenberg, as lender, in the amount of $500,000, (ii) a secured loan by Stephen A. Eisenberg, as lender, in the amount of $500,000, and (iii) a secured loan by Brian M. Eisenberg, as lender, in the amount of $1,500,000 (each such loan individually a "Secured Loan" and collectively, the "Secured Loans"). The Secured Creditors assert that they collectively hold a properly and timely perfected security interest in substantially all of the assets of the Debtor and the Bankruptcy Estate (the "Collateral").

WHEREAS, on May 9, 2022 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), thereby commencing Case No. 22-43781

---

1 "Secured Creditors" is a defined term for ease of reference only, not an acknowledgement that these persons are actually secured creditors of the Bankruptcy Estate.

(LSG) (the "Bankruptcy Case"). The Trustee was subsequently appointed to serve as the chapter 7 trustee of the Bankruptcy Estate.

WHEREAS, the Trustee is authorized and has standing to prosecute, settle, dismiss, abandon, or otherwise dispose of claims and avoidance actions including, but not limited to, claims arising under chapter 5 of the Bankruptcy Code;

WHEREAS, the Trustee has asserted the following claims on behalf of the Bankruptcy Estate (items 1 through 8 below, individually and collectively, the "Claims") against the Settling Parties:

1. A fraudulent transfer claim against KIG only as a result of a settlement agreement and release with former Chief Executive Officer of the Debtor Brian Hutto under Section 548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code ("Hutto Claims");

2. Fraudulent transfer claims against Brian M. Eisenberg only under Section 548 and 549 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code for his receipt of the following transfers (the "Transfers"):

   | | |
   |---|---|
   | A. January 2, 2020 - | $165,000.00 |
   | B. June 17, 2020 - | $500,000.00 |
   | C. June 31, 2020 - | $1,500,000.00 |
   | D. November 20, 2020 - | $100,000.00 |
   | E. November 20, 2020 - | $900,000.00 |
   | F. December 30, 2020 - | $500,000.00 |
   | G. December 30, 2020 - | $500,000.00 |
   | H. February 17, 2022 - | $250,000.00 |
   | I. May 6, 2022 - | $66,851.40 |
   | J. May 11, 2022- | $24,510.95 |

3. Fraudulent transfer claims under Section 548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code against Honigman LLP, KIG, Brian M. Eisenberg, Stephen A. Eisenberg, and Kenneth A. Eisenberg for funds paid by the Debtor to Honigman LLP for legal services provided to third parties for which the Trustee asserts reasonably equivalent value was not received by the Debtor;

4. Avoidance of the purported security interest of Kenneth A. Eisenberg, Stephen A. Eisenberg and Brian M. Eisenberg pursuant to Section 548 of the Bankruptcy Code and under MCL 566.31, et seq., through Section 544 of the Bankruptcy Code;

5. Breach of Fiduciary Duty claims against KIG and Brian M. Eisenberg only regarding the Transfers;

6. Breach of Fiduciary Duty claims against Honigman LLP, Alan S. Schwartz, and Matthew E. Radler regarding the Hutto Claims;

7. Breach of Fiduciary Duty (Aiding and Abetting) claims against Brian M. Eisenberg, Stephen A. Eisenberg, Kenneth A. Eisenberg, Frank Jerneycic, Honigman LLP, Alan S. Schwartz, and Matthew E. Radler regarding:

    A.    Causing the Debtor to sell the Cellairis Bundle, the Constant Connectivity Warranty Program ("CCWP1"), and the Second Constant Connectivity Program ("CCWP2") at a loss;

    B.    Causing the Debtor to use the revenues from its sale of the CCWP1 and CCWP2 warranties to service unfunded or underfunded warranty obligations;

    C.    Causing the Debtor to fail to maintain any reserves to service future warranty obligations;

    D.    Causing the Debtor to fail to fund premiums for CLIP; and

    E.    Causing the Debtor to engage in the fraudulent transfers described herein.

8. Legal Malpractice against Honigman LLP, Alan S. Schwartz, and Matthew E. Radler;

WHEREAS, each of the Settling Parties has disputed and continues to dispute each of the Claims;

WHEREAS, following good faith negotiations and in accordance with the terms stated in this Settlement Agreement, the Trustee and the Settling Parties each wish to settle and compromise all claims and causes of action (including, but not limited to, the Claims) that the Trustee and the Bankruptcy Estate had, have, or may have against the Settling Parties, individually and collectively, on the terms set forth herein, subject to Bankruptcy Court approval; and

THEREFORE, for due and adequate consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. <u>Settlement Effective Date.</u>  This Settlement Agreement will be effective upon entry by the Bankruptcy Court of an order, in form and substance acceptable to the Trustee and Settling Parties, barring the commencement or continuation of litigation of the Claims, as set forth below, and approving this Settlement Agreement in all respects pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and applicable law (the "<u>Approval Order</u>"). The date of the Approval Order becoming a final, non-appealable order is referred to herein as the "<u>Settlement Effective Date</u>".  Within three (3) business days following the full execution of this Settlement Agreement, the Trustee will file with the Bankruptcy Court a motion, in form and substance acceptable to the Settling Parties, seeking approval of this Settlement Agreement and entry of the Approval Order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and applicable law. The Approval Order shall contain a provision barring the commencement or continuation litigation of the Claims substantially in the form as follows (with any changes to such provision by the Bankruptcy Court being subject to the approval of the Settling Parties):

Bar of Litigation of Claims:  The entry of this Order constitutes the Bankruptcy Court's approval of the compromise and settlement of all claims, actions, causes of action, and controversies against the Settling Parties as set forth in the Settlement Agreement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor and its Bankruptcy Estate, and is fair, equitable, and reasonable.  For good and valuable consideration, all creditors of the Debtor who are served with notice of the Trustee's 9019 Motion (seeking approval of this Settlement

Agreement) are hereby permanently BARRED, ENJOINED and RESTRAINED from (i) commencing, continuing, prosecuting, or asserting, in any manner, any action or proceeding of any kind in respect of the Claims against the Settling Parties, whether arising as claims, cross-claims, counterclaims, or third-party claims, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere and (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or other order against any of the Settling Parties relating to or arising from the Claims, (collectively, the "Barred Claims"). Such injunction with respect to the Barred Claims shall extend to any successor, assign, heir, beneficiary, executor, and representative of or to the Settling Parties.

2. <u>Payment to Bankruptcy Estate</u>. Within 7 days of the Settlement Effective Date, the Settling Creditors will collectively pay to the Bankruptcy Estate the aggregate sum of $750,000, as a full and complete settlement amount (the "<u>Settlement Payment</u>").

3. <u>Avoidance of Secured Claims</u>. As of the Settlement Effective Date, the claims asserted by the Secured Creditors with respect to the Secured Loans and the proceeds thereof are avoided by the Bankruptcy Estate pursuant to sections 544, 547, and 548 of the Bankruptcy Code and preserved for the benefit of the Bankruptcy Estate pursuant to section 551 of the Bankruptcy Code. The Bankruptcy Estate shall retain all proceeds from the sale of the Secured Creditor's Collateral.

4. <u>Waiver of Additional Claims</u>. In addition to Section 3 hereof, the Settling Creditors hereby waive all claims, including, but not limited to Proof of Claims #58, 59, and 60, and will not assert any other claims against the Bankruptcy Estate, the Trustee (in his capacity as

chapter 7 trustee of the Bankruptcy Estate), or his counsel (in such counsel's capacity as counsel to the chapter 7 trustee of the Bankruptcy Estate).

5.  <u>Release.</u> Except as to the obligations owed by the parties to one another as set forth in this Settlement Agreement, the Trustee, in his capacity as the chapter 7 Trustee of the Bankruptcy Estate, and the Bankruptcy Estate, hereby individually, collectively, and irrecoverably release and forever discharge Brian M. Eisenberg, Stephen A. Eisenberg, Kenneth A. Eisenberg, Frank Jerneycic, KIG, Honigman LLP (and all of its partners, employees, and attorneys), Alan S. Schwartz, and Matthew E. Radler and their respective successors, assigns, insurers, heirs, beneficiaries, executors, and representatives of and from all debts, demands, actions, causes of action, charges, complaints, judgments, suits, warranties, covenants, contracts, promises, obligations, damages (including, without limitation, actual and compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, consequential, punitive and special damages, costs, and attorney's fees), liabilities and claims whatsoever, in law or in equity, whether acknowledged or not, whether based on any statute, law or ordinance, based on any contract or tort, based on mistake or misunderstanding, whether known or unknown, foreseen or unforeseen, fixed or contingent, asserted or unasserted, which the releasing Parties ever had, now have, or hereafter may have, by reason of, arising out of, or relating to, in whole or in part, any matter, act, transaction, occurrence, instrument, document, agreement, event, omission, or commission, existing or arising through the date of this Settlement Agreement.

6.  <u>Acknowledgement of Future and Other Claims</u>. The Trustee acknowledges that he may hereafter discover facts in addition to or different from those which he now believes to be

true with respect to the subject matter of this Settlement Agreement, but expressly agrees that he has taken this possibility into account in entering into this Settlement Agreement and that the settlement and releases agreed to and given in this Settlement Agreement will remain in full force and effect notwithstanding the discovery or existence of any such additional or different facts.

7. <u>No Admission of Liability.</u> Each of the Parties acknowledges that nothing hereunder will be construed as an admission of liability by the Settling Parties.

8. <u>Entire Agreement.</u> This Settlement Agreement constitutes the complete understanding between the Parties and may not be altered, amended, or modified in any respect, except by a writing duly executed by both Parties. It is understood and agreed by the Parties that all understandings, agreements, and representations heretofore had or made by the Parties with respect to matters covered by this Settlement Agreement are merged into this Settlement Agreement which alone fully and completely expresses the Parties' agreement.

9. <u>Voluntary Act</u>. The Parties acknowledge that they have read this Settlement Agreement in its entirety, fully understand its terms, and voluntarily accept the terms set forth herein. Further, each Party acknowledges that it/he has had an opportunity to consult with legal counsel and other advisers of its/his choosing with respect to the terms of this Settlement Agreement and, following such consultations, is signing this Settlement Agreement of its/his own free will.

10. <u>Attorney's Fees.</u> Each Party will bear its/his own attorney's fees and costs relating to the settlement negotiations and the negotiation and execution of this Settlement Agreement. If any Party commences an action to enforce the terms of this Settlement Agreement, however, the prevailing party will be entitled to an award, in addition to any other claims

or damages, of its/his costs and expenses including attorney's fees incurred in connection with such enforcement action.

11. No Assignment. The Trustee hereby represents and warrants to the Settling Parties that he has made no assignment, and hereafter will make no assignment, of any claim, cause of action, right of action, or any other right released pursuant to this Settlement Agreement.

12. Retention of Jurisdiction. The Bankruptcy Court will retain exclusive jurisdiction over any dispute related to this Settlement Agreement.

13. Execution in Counterparts. This Settlement Agreement may be executed in identical counterparts and may be transmitted by email or facsimile, each of which will be deemed an original for all purposes.

14. Statute of Limitations. Pursuant to Section 546 of the Bankruptcy Code the Trustee has two years from May 9, 2022 to bring Chapter 5 causes of action. In the event that the Bankruptcy Court has not issued an Approval Order on or prior to April 30, 2024, the Parties shall enter into a tolling agreement extending the deadline for the Trustee to bring the Claims. In the event that the Parties do not execute a tolling agreement on or prior to May 7, 2024, the Trustee shall be entitled to file an adversary proceeding against the Settling Parties in order to preserve the Claims for the bankruptcy estate. The Settling Parties and the Trustee shall immediately stipulate to stay the adversary proceeding until the time that an Approval Order is entered and the Settlement Effective Date is reached, at which time the Trusttee shall cause the dismissal, with prejudice and without cost, of the adversary proceeding.

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

_subject to court approval_

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_[signature]_                                       Dated: _1-19-24_

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____          Dated:_____
By:
Its:

KENNETH A. EISENBERG

_____          Dated:_____

STEPHEN A. EISENBERG

_____          Dated:_____

BRIAN M. EISENBERG

_____          Dated:_____

FRANK JERNEYCIC

_____          Dated:_____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____          Dated:_____
By:
Its:

ALAN S. SCHWARTZ

_____          Dated:_____

MATTHEW E. RADLER

_____          Dated:_____

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

subject to court approval

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_____        Dated: _1 - 19 - 24_

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____        Dated: _1 - 2 3 - 24_
By:
Its:

KENNETH A. EISENBERG

_____        Dated: _1/22/24_

STEPHEN A. EISENBERG

_____        Dated:_____

BRIAN M. EISENBERG

_____        Dated:_____

FRANK JERNEYCIC

_____        Dated:_____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____        Dated:_____
By:
Its:

ALAN S. SCHWARTZ

_____        Dated:_____

MATTHEW E. RADLER

_____        Dated:_____

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of the last date that this agreement is fully executed:

_subject to court approval_

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_[signature]_                                    Dated: 1-19-24

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____                Dated:_____
By:
Its:

KENNETH A. EISENBERG

_____                Dated:_____

_[signature]_ STEPHEN A. EISENBERG             Dated: 1/20/24

BRIAN M. EISENBERG

_____                Dated:_____

FRANK JERNEYCIC

_____                Dated:_____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____                Dated:_____
By:
Its:

ALAN S. SCHWARTZ

_____                Dated:_____

MATTHEW E. RADLER

_____                Dated:_____

Page **9** of **9**

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

subject to court approval

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_____     Dated: _1 - 19 - 24_

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____     Dated: _____

By:
Its:

KENNETH A. EISENBERG

_____     Dated: _____

STEPHEN A. EISENBERG

_____     Dated: _____

BRIAN M. EISENBERG

_____     Dated: _1/22/2__

FRANK JERNEYCIC

_____     Dated: _____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____     Dated: _____

By:
Its:

ALAN S. SCHWARTZ

_____     Dated: _____

MATTHEW E. RADLER

_____     Dated: _____

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

*subject to court approval*

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

Dated: _1-19-24_

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

Dated:_____

By:
Its:

KENNETH A. EISENBERG

Dated:_____

STEPHEN A. EISENBERG

Dated:_____

BRIAN M. EISENBERG

Dated:_____

FRANK JERNEYOIC

Dated: _1-22-24_

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

Dated:_____

By:
Its:

ALAN S. SCHWARTZ

Dated:_____

MATTHEW E. RADLER

Dated:_____

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

*subject to court approval*

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_____          Dated: __1 - 19 - 24__

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____          Dated: _____

By:
Its:

KENNETH A. EISENBERG

_____          Dated: _____

STEPHEN A. EISENBERG

_____          Dated: _____

BRIAN M. EISENBERG

_____          Dated: _____

FRANK JERNEYCIC

_____          Dated: _____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____          Dated: __1-23-24__
By: MARK A. STERN
Its: PARTNER AND GENERAL COUNSEL

ALAN S. SCHWARTZ

_____          Dated: __1/22/24__

MATTHEW E. RADLER

_____          Dated: _____

ACCORDINGLY, the Parties have caused this Settlement Agreement to be executed as of

the last date that this agreement is fully executed:

subject to court approval

TIMOTHY J. MILLER, in his capacity
as chapter 7 Trustee of Staymobile Venture LLC
and on behalf of the Bankruptcy Estate

_____  Dated: _1 - 19-24_

KENWAL INVESTMENT GROUP LLC, a
Michigan limited liability company

_____  Dated: _____

By:
Its:

KENNETH A. EISENBERG

_____  Dated: _____

STEPHEN A. EISENBERG

_____  Dated: _____

BRIAN M. EISENBERG

_____  Dated: _____

FRANK JERNEYCIC

_____  Dated: _____

HONIGMAN LLP
on behalf of itself and all of its partners,
employees, and attorneys

_____  Dated: _____

By:
Its:

ALAN S. SCHWARTZ

_____  Dated: _____

MATTHEW E. RADLER

_____  Dated: _1/22/2024_